Francis J. SCHAUB, Marjorie A. Kean Schaub, Francis J. Schaub for Daniel J. Schaub, a minor; Francis J. Schaub for Paul B. Schaub, a minor; and Josephine M. Kean, Plaintiffs and Appellants,

v.

Mary Lu JOB, Defendant and Appellee.

No. 13829.

Supreme Court of South Dakota.

Considered on Briefs March 30, 1983.

Decided June 22, 1983.

Timothy J. Nimick of Woods, Fuller, Shultz & Smith, P.C., Sioux Falls, for plaintiffs and appellants.

Joseph H. Barnett of Siegel, Barnett & Schutz, Aberdeen, for defendant and appellee.

WUEST, Circuit Judge.

This is an appeal from a judgment denying appellants any recovery on their claims for personal injury and property damage and from an order imposing terms as a condition of a continuance. We affirm the judgment, reverse the order, and remand the case for further proceedings with respect to the issue of terms.

On December 23, 1978, appellants Marjorie A. Schaub, her husband, Francis Schaub, her two minor sons, Daniel and Paul, and her mother, Josephine M. Kean, were traveling in an easterly direction on Sixth Avenue in the City of Aberdeen. Mrs. Schaub was driving a 1970 Pontiac which was owned by her. Her husband was seated next to her in the front seat and her mother was seated to his right. The two minor sons were in the back seat. Sixth Avenue at that time was a four-lane highway with two lanes running in either direction. The vehicle being operated by Mrs. Schaub was in the lane next to the center line. She stopped her automobile for the traffic in front of her, and while she was stopped her auto was struck from the rear by a vehicle operated by appellee, Mary Lu Job. Appellee had been traveling behind the Schaub vehicle when she noticed it had stopped for traffic. She attempted to turn into the right lane and pass appellants, but was unable to do so because of the traffic, and thereby struck the right rear bumper of the Schaub vehicle. At the time of impact her speed was between five and ten miles per hour. Investigating Officer Gary Myhre put down $25 as his best estimate of damage on the official report for each vehicle after first putting no damages for appellants' vehicle.

On March 5, 1980, Mrs. Schaub, her husband, mother, and two minor sons commenced five separate actions against the appellee, claiming damages as a result of the accident. These actions were consolidated for trial, which was held on March 11 and 12, 1982. The trial judge directed a verdict against appellee on the issue of negligence, but submitted the issues of personal injuries and damage to the automobile, and the proximate cause thereof for determination by the jury, which returned a verdict of no damages. The court denied a motion for a new trial. All five plaintiffs appeal.

Two issues have been presented for our determination:

1. SHOULD THE TRIAL COURT HAVE GRANTED THE MOTION FOR NEW TRIAL ON THE BASIS THAT THE VERDICT OF THE JURY WAS INADEQUATE AND AWARDED UNDER THE INFLUENCE OF PASSION AND PREJUDICE?

2. SHOULD THE TRIAL COURT HAVE AWARDED TERMS TO THE DEFENDANT OF $2,000 AS A CONDITION OF GRANTING A CONTINUANCE?

In regard to the new trial issue, appellants argue that the jury disregarded the court's instructions and the evidence of the nature and extent of the injuries involved, or in the alternative, that the jury was influenced by passion or prejudice because counsel was permitted to inquire into other lawsuits in which the Schaubs were engaged. Appellee counters by asserting there was a conflict in the testimony as to whether or not any damages were sustained and that the inquiry into other lawsuits was proper to determine credibility of the appellants who testified in support of their claims.

It has been the law in this state for many years that a motion for a new trial upon a question of fact is addressed to the sound discretion of the trial court, and the granting or the refusing of such new trial will not be disturbed unless it appears affirmatively from the record that there has been an abuse of discretion. *Basin Electric Power Coop. v. Gosch,* 90 S.D. 222, 240 N.W.2d 96 (1975). Therefore, the record must be examined viewing it most favorably to the verdict when a new trial is denied. *Ford v. Policky,* 81 S.D. 361, 135 N.W.2d 473 (1965), citing *Jensen v. Miller,* 80 S.D. 384, 124 N.W.2d 394 (1963). *Basin Electric, supra.*

## AUTOMOBILE DAMAGE

The vehicle was owned by appellant Marjorie Schaub. She testified that the difference in the value before the accident and after the accident was $800. An estimate for repair of the vehicle was $816.07. Officer Myhre at the scene of the accident estimated the damage on his official report at $25. The undisputed testimony of appellee establishes that she was traveling from five to ten miles per hour when she struck the rear bumper. Both appellee and her adult passenger testified that they did not see any damage to the Schaub vehicle. The vehicle was driven away from the accident, used every day, and no estimate obtained until nine months later on September 21, 1979. Another lawsuit was brought for damages to the same vehicle arising out of another incident, and a later estimate obtained in connection with that claim showed damage to the right door, an area also claimed by appellants to be damaged in the instant accident which was not disclosed on the September 21, 1979 estimate. Appellee described the collision as a slight bump, which resulted in no damage to her vehicle except for leaving a mark on her bumper. Her adult passenger testified that it was "just like bumper to bumper, a bump." Mrs. Schaub claimed damage to the rear bumper. However, appellee presented a picture of the bumper in evidence and requested Mrs. Schaub to place an "X" on the bumper where she claimed a dent. She placed an "X" on the bumper. If there is a dent on the bumper, it does not appear in the picture. In viewing the testimony favorable to the verdict, we conclude the jury could have found no damage to the automobile. The jury had the duty to resolve this conflicting testimony. *Kamp Dakota, Inc. v. Salem Lumber Co., Inc.,* 89 S.D. 696, 237 N.W.2d 180 (1975).

## PERSONAL INJURIES

All the appellants claim personal injuries in the nature of whiplash. They introduced medical evidence which would support an award to them. Primarily, this evidence was based upon statements made by them to a Dr. Ferguson and a Dr. Hogan. The first time appellants were examined by Dr. Ferguson, of Fargo, North Dakota, was one year after the accident, an examination that was arranged by their lawyer. The Schaub family returned less than two months later for another examination by a neurologist in the same clinic. All five appellants were then again examined by Dr. Ferguson immediately before his deposition was taken for use at the trial. Dr. Hogan examined Francis, Marjorie and Daniel Schaub two years after the accident. Both Dr. Ferguson and Dr. Hogan based their opinions upon the subjective complaints made to them, as distinguished from objective findings. Subjective findings were defined by Dr. Ferguson as those based on statements made to him by patients, as distinguished from objective findings, which can be clinically determined. Consequently, the defense strategy was to attack the credibility of those statements to the physicians.

The husband, Francis Schaub, had practiced chiropractic in Minnesota for several years prior to moving to South Dakota, so he was familiar with the type of injuries claimed. Josephine Kean was a registered nurse, who had practiced most of her life in Washington State. After the accident in issue, none of the appellants were examined, confined, or treated by any licensed physician until ten months after the accident when the four Schaubs were examined at the University of Minnesota Hospital emergency room while in Minneapolis keeping an appointment for another son not involved in the accident in litigation. They were told to return as necessary, which none of them ever did.

Bills were received in evidence from appellant Kean to the Schaubs for home therapy by her to them. No claim was made for these services in the present lawsuit, the bills having been prepared and submitted for a different insurance claim. These bills allegedly showed treatment for the injuries sustained in the accident. Four of these bills were eleven pages long, one each for the four Schaubs, and were identical in sums and data for $4,250 each. In addition,

there were three more for the treatment of the Schaubs covering a later period for exact total amounts without variation. They were all typed by Mrs. Schaub for her mother. The defense claimed these bills were all made after the fact, and in support thereof cited the similarities and uniformity of entries. In addition, they cited claimed services the day of the accident, the next day when their house burned, and the next thirty days when the parties were living at the Sheraton Motel.

The cross-examination of Dr. Ferguson severely damaged the claim of appellant, Paul Schaub, for Dr. Ferguson testified that if it were not for Paul's complaints, he would have found "zero impairment." Dr. Ferguson further stated, "I don't understand why that lad isn't out doing what everybody else is doing." On further cross-examination he indicated there should be significant car damage for all the people to have significant injuries. He also said he wanted to see some force. He further admitted that the photos of the Schaub automobile were not consistent, "generally speaking" with serious injuries to all occupants of a car.

Evidence established that Daniel Schaub played basketball since 1980 to the year of the trial.

Other evidence showed that Mrs. Schaub had claimed damages arising out of a later incident when she was handling sheep. This incident probably caused the jury to wonder why if she was suffering from a whiplash she was wrestling sheep.

■ These facts, in addition to others detailed in the evidence, must have affected the credibility of appellants' complaints upon which their medical testimony was based. The jury could have decided that appellants had not proved their case by a preponderance of the evidence. Jurors are the sole judges of the credibility of the witnesses, and they were not bound to accept the statements of the appellants and the opinion of their experts based thereon as absolutely true. *Kamp Dakota, supra.*

Even appellants' principal medical witness, Dr. Ferguson, expressed some skepticism that five whiplash injuries of the type complained of by appellants could have resulted from an impact as slight as that giving rise to these lawsuits.

■ Inquiry was made by counsel for the defense on cross-examination concerning other lawsuits involving the Schaub family. Ordinarily, such inquiries would not be relevant, but in this case they were since there was a question whether the claimed injuries were sustained in the accident in question or in other incidents. We find no abuse of discretion by the trial judge in denying a new trial on the issue of damages.

■ This case was originally set for trial on May 5, 1981, by a written order dated April 3, 1981, which was served on appellants. It appears there had been difficulty getting appellants to comply with a discovery order and getting them to trial. The trial court had previously warned appellant Francis Schaub that there would be no further continuance unless appellants complied with the statutes on continuances. On the morning of the scheduled trial, appellant Francis Schaub appeared *pro se* requesting a continuance. Appellants did not have an attorney since the services of their lawyer had been terminated April 1, 1981. In the meantime Mr. Schaub had conferred with a lawyer in North Dakota, but was unable to retain him. On the day set for trial, after considerable discussion the court continued the five cases upon terms of $400 per case, for a total of $2,000, to be paid by May 20, 1981, or the cases were to be dismissed with prejudice. These terms were paid.*

Appellants claim this action was an abuse of discretion since there was no showing of any costs and expenses. Appellants concede costs may be imposed under SDCL 15–17–25. They cite *Olesen v. Snyder*, 277 N.W.2d 729 (S.D.1979), where this court affirmed an award of $1,000 as costs incurred by a defendant. In the *Olesen* case it was shown the defendant had traveled from

---

* The judge granting the continuance did not pre-    side at the trial of the case.

Idaho to South Dakota, incurring travel expenses of $730, and expenses for his attorney traveling from Pierre, South Dakota, to Chamberlain, South Dakota. In affirming the award, the court noted the terms were to compensate defendant for expenses "occasioned by the postponement."

In the case at bar, there were no expenses shown to have been occasioned by the postponement of this trial, except that counsel requested $500 per case and said that his client had spent $5,000 preparing the cases for trial.

We believe the trial court should have ascertained the expenses caused by the postponement before arbitrarily assessing the terms in "ballpark figures." It may have cost $5,000 to prepare the case for trial, but how much of that was lost by the delay? Not all of the research, depositions, etc., were totally lost because of postponement. Undoubtedly, there was some loss incurred which entitled appellee to terms, but the amount should have been based on some evidence.

Appellants accepted the benefits of the continuance; therefore, they must pay some terms. However, we remand the case for determination by the trial court of the amount based on evidence, which terms may include all expenses incurred because of the postponement, including attorney fees.

The judgment is affirmed. The order imposing terms is reversed, and the case is remanded to the circuit court for a determination of the amount of the terms.

WOLLMAN and MORGAN and HENDERSON, JJ., concur.

DUNN, J., concurs in part and dissents in part.

WUEST, Circuit Judge, sitting for FOSHEIM, C.J., disqualified.

DUNN, Justice (concurring in part and dissenting in part).

I would concur with the majority opinion in remanding the matter of terms for further determination.

I am also of the opinion that the entire case should be retried. The only affirmative evidence in the record came from the doctors who testified to certain definite injuries and impairment of each of the appellants and related these injuries to the present accident. No medical testimony was presented to refute these opinions. Instead of contrary medical evidence, we have a blistering cross-examination with almost every question directed towards prejudicing the jury against these appellants and their doctors. After a full review of the record, I am of the firm opinion that these appellants were not given a fair trial. I would reverse and remand the case for a new trial.